**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**FRATERNITY COLLECTION, LLC**                                              **PLAINTIFF**

**V.**                                              **CAUSE NO. 3:13-CV-664-CWR-FKB**

**ELISE FARGNOLI,** *d/b/a*                                              **DEFENDANT**
**FRANCESCA JOY**

<u>**ORDER**</u>

Before the Court are motion to dismiss filed by both parties. Docket Nos. 20, 32. After reviewing the allegations, arguments, and applicable law, the plaintiff's complaint will survive in full and the defendant's counterclaims will survive in part.

**I.      Factual and Procedural History**

Fraternity Collection is a Mississippi company that designs, manufactures, and sells shirts. It is proud of the "Pocket Shirt," a custom article of clothing in which customers pick a particular style of shirt and then select one of almost 200 designs to be the shirt pocket.

This suit grows out of Fraternity Collection's collaboration with Elise Fargnoli, a clothing designer based in Connecticut. Fargnoli runs the "Francesca Joy" brand.

In 2012, the parties agreed that Fargnoli would design two new series of Pocket Shirts: one called "Francesca Joy" and another containing sorority themes (using unlicensed sorority images). Fraternity Collection thought it would be the exclusive seller of these designs. Sales of the first line commenced in fall 2012. The second line was never manufactured or sold; it was only designed.

In January 2013, Fraternity Collection learned that Fargnoli was selling her Francesca Joy designs to a competitor. It asked for clarification and was promised that it had an exclusive

right to that line. Despite this promise, it claims it again found the Francesca Joy line for sale at the same competitor. Fraternity Collection was again promised exclusivity.

In March 2013, while their business relationship was ongoing, Fraternity Collection obtained a license to manufacture and sell products containing fraternity and sorority logos – a so-called "Greek license." It hired a graphic artist to design sorority-themed Pocket Shirts. At this point, then, the looming conflict is apparent: Fargnoli had already designed a sorority-themed line of Pocket Shirts for Fraternity Collection, and now Fraternity Collection was designing its own sorority-themed line without her.

In June 2013, Fraternity Collection stopped doing business with Fargnoli and claims to have paid her all her royalties.

By September 2013, Fargnoli had returned to selling her clothing at Fraternity Collection's competitor. She used the terms "#fratcollection" and "#fraternitycollection" in her social media accounts to promote her designs for the competitor.

The legal threats also started in September 2013. Fargnoli sent Fraternity Collection a cease and desist letter demanding that it stop selling the Francesca Joy line of Pocket Shirts and Fraternity Collection's new sorority-themed Pocket Shirts. Fraternity Collection responded that it had already stopped selling the Francesca Joy line in June; that its sorority-themed designs were distinct from the ones Fargnoli had designed; and that Fargnoli should stop implying a relationship with Fraternity Collection on social media.

The parties' letters did not resolve the dispute. Among other things, Fargnoli is mad about Fraternity Collection advertisements which contain the Francesca Joy line of Pocket Shirts, while Fraternity Collection is mad that Fargnoli's "Francesca Joy" Facebook page contains an album of models wearing Fraternity Collection merchandise.

Fraternity filed this suit in October 2013. It seeks a declaratory judgment that its advertisements can contain Fargnoli-designed Pocket Shirts since they were properly licensed at the time of their manufacture and are no longer for sale. It then seeks a declaration that its own sorority-themed Pocket Shirts are not a knockoff of Fargnoli's sorority-themed Pocket Shirts. Fraternity Collection also seeks damages for Fargnoli's use of the terms "#fratcollection" and "#fraternitycollection" on social media. It claims that the terms cause consumer confusion which deprive Fraternity Collection of business and goodwill. The damages are sought under the Lanham Act and common law trademark infringement.

Fargnoli has counterclaimed. Her allegations express irritation that even during the fruitful time of their partnership, Fraternity Collection would advertise her Pocket Shirt designs without listing her by name in the advertisements. Her first 10 counterclaims allege that Fraternity Collection's advertising of the Francesca Joy line and use of its own sorority-themed designs on Pocket Shirts constitute reverse passing off, false advertising, false designation of origin, unfair competition, and trademark infringement meriting damages under the Lanham Act. Counts 11-17 allege copyright infringement. Counts 18-25 are state law claims for unfair competition, breach of contract, intentional interference with existing business relations, and breach of the covenant of good faith and fair dealing. The final four counts are for the vicarious copyright infringement of Fraternity Collection's resellers.[1]

The competing motions to dismiss followed shortly thereafter. Fargnoli's motion will be treated as one for judgment on the pleadings since it was filed after she answered. *See Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999).

---

[1] Count 30 seeks injunctive relief. This will be treated as a requested remedy and not as a cause of action.

## II.      Legal Standards

When considering a motion to dismiss, the Court accepts the plaintiff's factual

allegations as true and makes reasonable inferences in the plaintiff's favor. *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009). The complaint must contain "more than an unadorned, the defendant-

unlawfully-harmed-me accusation," but need not have "detailed factual allegations." *Id.* (citation

and quotation marks omitted). The plaintiff's claims must also be plausible on their face, which

means there is "factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Id.* (citation omitted). "The purpose of a motion

to dismiss is to test the sufficiency of the complaint, not to decide the merits." *Gibson v. City of

Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990) (citation omitted). "[A] well-pleaded complaint

may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable,

and that a recovery is very remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556

(2007) (quotation marks and citation omitted).

The same standard applies to motions for judgment on the pleadings. *See Guidry v. Am.

Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007).

## III.     Discussion

### A.      Fargnoli's Motion for Judgment on the Pleadings

#### 1.      Declaratory Action

Fargnoli first argues that Fraternity Collection's request for declaratory judgment fails

because it was filed in anticipation of litigation *she* was planning to file. She specifically

complains that Fraternity Collection filed suit instead of continuing to correspond with her

counsel regarding settlement. Fargnoli contends that its request for declaratory judgment is

effectively irrelevant because it is subsumed by her counterclaims.

4

In these situations, this Court "must determine: (1) whether the declaratory action is justiciable; (2) whether the court has the authority to grant declaratory relief; and (3) whether to exercise its discretion to decide or dismiss the action." *Sherwin-Williams Co. v. Holmes Cnty.*, 343 F.3d 383, 387 (5th Cir. 2003). It is obvious that the first two elements are satisfied: the parties have an actual controversy and this Court has authority to grant declaratory relief. The question, then, is whether the Court should decide or dismiss the declaratory judgment action.

Among other reasons, "declaratory judgment relief may be denied because of a pending state court proceeding in which the matters in controversy between the parties may be fully litigated, because the declaratory complaint was filed in anticipation of another suit and is being used for the purpose of forum shopping, because of possible inequities in permitting the plaintiff to gain precedence in time and forum, or because of inconvenience to the parties or the witnesses." *Rowan Companies, Inc. v. Griffin*, 876 F.2d 26, 29 (5th Cir. 1989) (citation omitted); *see, e.g.*, *United Nat. Ins. Co. v. Jackson Redevelopment Auth. Bd. of Comm'rs*, No. 3:14-CV-466, 2015 WL 144930, at *1 (S.D. Miss. Jan. 12, 2015).

In this case, there is no state court action to defer to. That simple fact brings our case out of the ambit of others cited by Fargnoli. *E.g.*, *Mission Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d 599, 602 (5th Cir. 1983) (affirming district court's decision to dismiss declaratory judgment action in deference to parallel California litigation).

It also is not enough that Fraternity Collection filed suit in anticipation of Fargnoli's own lawsuit. "The mere fact that a declaratory judgment action is brought in anticipation of other suits does not require dismissal of the declaratory judgment action by the federal court." *Sherwin-Williams*, 343 F.3d at 397. If all parties had to wait for the other to file, the federal courts would have very little litigation indeed. And if filing was a mistake due to pending

settlement negotiations, the parties obviously know that they may take this case away from the Court at any time by working out their differences.

Finally, the Court simply disagrees with Fargnoli's rebuttal argument that she has been subject to "extreme and perhaps strategic disadvantage" by this lawsuit proceeding in this "burdensome and entirely inconvenient" forum. Docket No. 46, at 5-6. She has not explained how the undersigned will resolve her case differently than a federal court in Connecticut.

Considering the foregoing, the Court will decide this declaratory judgment action.

## 2.      Lanham Act – False Advertising

Fargnoli next argues that her opponent fails to state a claim for false advertising under the Lanham Act. She says that Fraternity Collection's exhibits undercut its complaint, denies that her social media posts were false or misleading, and argues that even viewing the facts "in a light most favorable to Fraternity Collection," the complaint lacks "evidence" and "demonstrates no actual deception." Docket No. 33, at 7-8.

Fargnoli has conflated the summary judgment standard with the motion to dismiss standard. *See* Part II, *supra*; *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009) ("It is axiomatic that the standards for dismissing claims under Fed. R. Civ. P. 12(b)(6) and granting judgment under either Fed. R. Civ. P. 50 or Fed. R. Civ. P. 56 are vastly different."); *Texas Cable & Telecommunications Ass'n v. Hudson*, 265 F. App'x 210, 216 (5th Cir. 2008) ("the requirements of the plaintiff with respect to a motion to dismiss and an adversarial motion for summary judgment will be substantially different").

A review of Fraternity Collection's complaint reveals that it has stated a claim for Lanham Act false advertising. *Compare* Docket No. 1, at 11 *with Logan v. Burgers Ozark Country Cured Hams Inc.*, 263 F.3d 447, 462 (5th Cir. 2001). The Court accepts for present

6

purposes the notion that hashtagging a competitor's name or product in social media posts could, in certain circumstances, deceive consumers. Being mindful of the posture of this case, "at the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Hudson*, 265 F. App'x at 216 (quotation marks, citations, and brackets omitted). Fargnoli may reassert her arguments against this claim at the close of discovery.

### 3.      Common Law Trademark Infringement

Finally, Fargnoli argues that Fraternity Collection has failed to state a claim for common law trademark infringement under either federal or Mississippi law. She says Fraternity Collection's failure to register its mark means that any federal cause of action is subsumed by the Lanham Act, while any state law cause of action is barred by statute. Docket No. 33, at 9-10. Fargnoli also reasserts her plausibility arguments, discussed above.

In response, Fraternity Collection points to state law authorities stating that it may seek to prove common law trademark infringement in Mississippi. *E.g.*, Miss. Code Ann. § 75-25-31 ("Nothing herein shall adversely affect the rights or the enforcement of rights in marks acquired in good faith at any time at common law."); Jackson *et al.*, 8 Encyclopedia of Miss. Law § 71:15 (updated Sept. 2014) (stating that Mississippi statutory law "does not displace common law remedies"). Fargnoli suggests the validity of those authorities by defending only her plausibility arguments in her reply brief.

The Court agrees that Fraternity Collection may attempt to prove trademark infringement under Mississippi common law and, for the reasons already stated regarding the Lanham Act, finds that Fraternity Collection's complaint sufficiently states such a claim.

**B.     Fraternity Collection's Motion to Dismiss Counterclaims**

**1.     Counts 1-10 and 18-19**

Fraternity Collection argues that Fargnoli's claims for reverse passing off[2], false advertising, false designation of origin, unfair competition, and trademark infringement, which together take issue with Fraternity Collection's failure to attribute Fargnoli's incorporated pocket designs to her, are not actionable under the Lanham Act. The Court agrees.

"The Lanham Act proscribes the inappropriate use of trademarks and goods and services. Section 43(a) specifically prohibits the use of false descriptions and false designations of origin when advertising or selling goods or services in commerce." *Roho, Inc. v. Marquis*, 902 F.2d 356, 358 (5th Cir. 1990). This part of the Lanham Act states as follows:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> > (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
> > (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a). "Because of its inherently limited wording, section 43(a) can never be a federal codification of the overall law of unfair competition, but can only apply to certain unfair trade practices prohibited by its text." *Baden Sports, Inc. v. Molten USA, Inc.*, 556 F.3d 1300, 1305 (Fed. Cir. 2009).

---

[2] "Reverse [passing] off occurs with the direct misappropriation of the services or goods of another. Traditional and reverse [passing] off activities have both been recognized as wrongful because they involve attempts to misappropriate another's talents." *Roho, Inc. v. Marquis*, 902 F.2d 356, 359 (5th Cir. 1990) (citations omitted).

In 2003, the Supreme Court ruled that "the phrase 'origin of goods' in the Lanham Act . . . refers to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods." *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 37 (2003).

Here, because Fargnoli did not produce the tangible goods offered for sale, the Lanham Act does not permit her to sue Fraternity Collection for not attributing its incorporated designs to her. Fraternity Collection's descriptions were not false and did not cause consumer confusion because it was the producer of the goods in question.

Fargnoli also appears to invoke the Lanham Act's protections for "the nature, characteristics, qualities, or geographic origin of . . . goods." 15 U.S.C. § 1125(a)(1)(B); *see* Docket No. 23, at 11. But she cannot sue under this section because the goods in question were Fraternity Collection's. This part of the Lanham Act does not permit Fargnoli to claim a violation of her "authorship" rights. *See Baden Sports*, 556 F.3d at 1307 ("authorship . . . is not a nature, characteristic, or quality, as those terms are used in Section 43(a)(1)(B) of the Lanham Act.").

For these reasons, Counts 1-10 are due to be dismissed.

Fraternity Collection claims that this conclusion also requires dismissal of Fargnoli's equivalent state law claims, captioned under Counts 18 and 19. Its support for this proposition is *Blue Bell Bio-Med. v. Cin-Bad, Inc.*, where the Fifth Circuit held that "[a] ruling on the likelihood of confusion under the Lanham Act also controls an unfair competition claim under state law." 864 F.2d 1253, 1261 (5th Cir. 1989) (citations omitted).

Although Fargnoli disagrees with this "domino-effect argument," she has failed to present any authority distinguishing or contradicting *Blue Bell*. Docket No. 23, at 20. Accordingly, Counts 18 and 19 will be dismissed.

### 2.   Counts 11-17 and 26-29

Fraternity Collection next contends that Fargnoli's copyright claims should be dismissed in part, arguing that she has no right to having her Fraternity Collection designs attributed to her, that the pocket shirts in question are "useful articles" protected by 17 U.S.C. § 113(c), and that there is no vicarious or contributory infringement under the "first sale" doctrine.

A brief summary of Fargnoli's copyright claims is necessary.

- Count 11 claims Fraternity Collection made unauthorized reproductions of her original designs;
- Count 12 claims Fraternity Collection made unauthorized distributions of her original designs;
- Count 13 claims Fraternity Collection made unauthorized public displays of her original designs;
- Count 14 claims Fraternity Collection's sorority designs are unauthorized reproductions of her sorority designs;
- Count 15 claims Fraternity Collection's sorority designs are unauthorized derivative works based on her sorority designs;
- Count 16 claims Fraternity Collection's sorority designs are unauthorized distributions of her sorority designs;
- Count 17 claims Fraternity Collection's sorority designs are unauthorized public displays of her sorority designs;
- Count 26 claims Fraternity Collection is vicariously liable for the advertisements of its marketing and sales partners which contain Fargnoli's copyrighted original works;
- Count 27 claims Fraternity Collection bears contributory liability for the advertisements of its partners containing Fargnoli's copyrighted original works;
- Count 28 claims Fraternity Collection is vicariously liable for the advertisements of its partners containing Fraternity Collection's sorority line of pocket shirts; and
- Count 29 claims Fraternity Collection bears contributory liability for the advertisements of its partners containing Fraternity Collection's sorority line of pocket shirts.

Docket No. 13, at 33-44, 51-55. Presumably, Counts 11-13 and 26-27 refer to advertisements of Fargnoli's Francesca Joy line of pockets.

Fraternity Collection argues that Counts 11-13 and 26-27 can be reduced to Fargnoli's assertion of a right to attribution. Docket No. 21, at 15. She denies invoking such a right.

Although Fargnoli has repeatedly complained about a lack of attribution in Fraternity Collection's advertisements, it is possible that those allegations were made to support her breach of contract claim. Fraternity Collection's copyright-based argument will not support dismissing these counts, as they state a claim without relying upon the right to attribution.

Fraternity Collection then argues that Counts 11-13 and 26-27 are barred by the useful article doctrine. That doctrine provides as follows:

> In the case of a work lawfully reproduced in useful articles that have been offered for sale or other distribution to the public, copyright does not include any right to prevent the making, distribution, or display of pictures or photographs of such articles in connection with advertisements or commentaries related to the distribution or display of such articles, or in connection with news reports.

17 U.S.C. § 113(c). "[T]he design of a useful article" is copyrightable "only if, and only to the extent that, such design incorporates pictorial, graphic, or sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article." *Id.* § 101. In other words, "copyright law does not allow one to copyright 'clothing designs' in which the artistic and utilitarian qualities are indivisible." *Galiano v. Harrah's Operating Co.*, 416 F.3d 411, 414 (5th Cir. 2005).

While the useful article doctrine may ultimately apply in this case, a brief review suggests that its application can be quite fact-specific. *See id.* ("Bonnie Belleau, Ph.D., . . . opined that the Gianna uniform designs are highly artistic and that the utilitarian and aesthetic

elements are easily separable"). It is appropriate to let this claim proceed until evidence can be gathered and presented to the Court via motion practice or otherwise.

Finally – at least with respect to the copyright claims – Fraternity Collection contends that Fargnoli's vicarious and contributory infringement claims fail under the "first sale" doctrine. *See* 17 U.S.C. § 101(a), (c). As above, the Court finds that this too presents a fact-specific question suited for resolution later in the case.  The parties are reminded that at this early stage, a "well-pleaded complaint" is all that is necessary to proceed.

For these reasons, Fargnoli's copyright claims may proceed.

### 3. Counts 20-25

What remains are state law claims for breach of contract, intentional interference with business relations, and breach of the covenant of good faith and fair dealing.

Fraternity Collection contends that Fargnoli's breach of contract claim, Count 20, fails because she never complained about advertisements lacking attribution during the course of their business relationship. This failure results in waiver to complain about the attribution problem now, it says. The Court finds this issue to be a question of factual adequacy, not legal adequacy. It is best reserved for the summary judgment stage.

Fraternity Collection then argues that the intentional interference claims fail to state a claim and are preempted by the Copyright Act. *See* 17 U.S.C. § 301(a). The Court agrees.

First, Counts 21-24 do not allege how Fraternity Collection communicated or otherwise interfered with Fargnoli's other business relationships. To the extent Fargnoli's other contracts were mentioned in the parties' decision to discontinue their relationship, that seems to be subsumed in the parties' disagreement about their licensing agreement, which will be resolved via other, live counts.

Second, Fargnoli's intentional interference counts are repackaged complaints about the theft of Fargnoli's intellectual property. If Fraternity Collection has improperly produced and sold goods containing Fargnoli's original designs, it will be held liable for that under the Copyright Act.

Finally, Fraternity Collection contends that Fargnoli has failed to state a claim for breach of the covenant of good faith and fair dealing – Count 25 – because she has not specified how it violated standards of decency, fairness, or reasonableness. *See Cenac v. Murry*, 609 So. 2d 1257, 1272 (Miss. 1992) ("The breach of good faith is bad faith characterized by some conduct which violates standards of decency, fairness or reasonableness."). Rather, Fargnoli has incorporated the prior 50 pages of her counterclaim as the supporting factual basis for this cause of action.

At the moment, this case has every appearance of being a routine business dispute. This cause of action may very well be resolved on summary judgment. Despite this impression, the question of "reasonableness" is rather broad, and the Court finds it more prudent to await the evidence before disposing of a questionable claim.

Accordingly, Counts 21-24 are due to be dismissed.

IV.    **Conclusion**

The plaintiff's motion is granted in part and denied in part. The defendant's motion is denied. Within 10 days, the parties shall contact the Magistrate Judge's chambers to discuss an amended scheduling order.

**SO ORDERED**, this the 31st day of March, 2015.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE

13